UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KELLEY JOHNSON,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

NO. CV-12-3060-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 18 and Defendant's Motion for Summary Judgment, ECF No. 20. The motions were heard without oral argument. Plaintiff is represented by D. James Tree. Defendant is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Gerald Hill.

## I. Jurisdiction

On July 21, 2008, Plaintiff Kelley Johnson filed a Title II application for disability insurance benefits (DIB) and a Title XVI for supplemental security income (SSI). Plaintiff alleged she is disabled because of PTSD, depression, and anxiety. (Tr. 157-58.)

Her application was denied initially on September 24, 2008, and again denied on reconsideration on November 6, 2008. A timely request for a hearing was made. On June 15, 2010, Plaintiff appeared in Yakima, Washington before Administrative Law Judge (ALJ) Marie Palachuk, who appeared by video-conference from Spokane, Washington. Dr. Margaret Moore, medical expert, and

Sharon Welter, vocational expert, also appeared at the hearing. Plaintiff was represented by attorney D. James Tree. At the hearing, Plaintiff amended the onset date to July 1, 2007.

The ALJ found that Plaintiff was not disabled since July 1, 2007. Plaintiff timely requested review by the Appeals Council, which was denied on February 23, 2012. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h). Plaintiff timely filed an appeal with the U.S. District Court for the Eastern District of Washington on April 23, 2012. The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571,

416.920(b). If she is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, the ALJ proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

**III. Standard of Review**

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**IV. Statement of Facts**

The facts have been presented in the administrative transcript and the ALJ's decision, and will only be summarized here.

At the time of the hearing, Plaintiff was 32 years old. She has two children, although her parents adopted her first son. She lived with the father of her first son for a time period, although during this time, he was physically and emotionally abusive. At one point, he threatened to kill Plaintiff. This caused her to go into hiding, living on the streets. She used various recreational drugs at this time when

they were available. In 2007, she became pregnant again after being raped. She stopped using drugs and has been clean since that time.

She has attempted to commit suicide three times. She was hospitalized for two of the attempts. Plaintiff has limited work experience, working at a cherry orchard, as a cashier, as a nursery school attendant, and a mold dresser, which was described by the vocational expert as breaking and cleaning the molds and waxing the inside of the molds. (Tr. 65.)

Plaintiff was in special education throughout her school years. She left school in 10th grade. She struggled with reading and math. She has not earned her GED. Plaintiff has suffered from depression from an early age and was diagnosed with ADHD in the fourth grade. Her ADHD was successfully treated with medication until she stopped taking the medication because her fellow classmates began teasing her. She testified that she has no hobbies or activities. She described her current state of mind:

> I don't really care about nothing. I don't want to do anything. I'm just really wasting my life, Well, I read books to my son and do stuff that I have to do, you know, to take care of him. But I don't think if I didn't have him, I don't think I'd be like around.

(Tr. 60.)

Upon further questioning, Plaintiff explained, "I don't know, I'm just here because I have to be. Because my son didn't ask to be here and it's my responsibility to raise him." (Tr. 60.)

**V. The ALJ's findings**

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. (Tr. 23.)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2007, the amended alleged onset date. (Tr. 21.)

At step two, the ALJ found Plaintiff had the following severe impairments: attentional deficit hyperactivity disorder; affective disorder/depression; personality disorder, not otherwise specified; and polysubstance abuse/dependence in full,

sustained remission. (Tr. 24.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22.) The ALJ considered whether Plaintiff met the listing for 12.02, 12.04, 12.08, 12.09. (Tr. 25.)

The ALJ found that Plaintiff has the residual functional capacity[1] to perform the full range of work at all exertional levels, but with the following nonexertional limitations: can maintain sufficient attention and concentration to understand, remember and follow simple instructions; and can maintain sufficient attention and concentration to perform routine tasks. She must work in a low stress job (one involving only occasional changes in the work setting). Her interaction with the public is limited to superficial and she should work primarily alone, and with only occasional supervision. (Tr. 26.)

At step four, the ALJ found Plaintiff was capable of performing past relevant work as a fruit harvest worker, cashier-checker, mold dresser, and sorter, agriculture produce. (Tr. 31.)

**VI. Issues for Review**

---

[1]"RFC is what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments. It is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to perform work-related physical and mental activities. . . RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis: i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR96-6P.

Plaintiff presents the following issues with respect to the ALJ's findings:

1. Did the ALJ commit reversible error by finding contrary to her own VE's testimony that Dr. Moore's opinions equated to no work?

2. Did the ALJ commit reversible error by improperly rejecting Dr. Rodenberger's and Ms. Meck's opinion?

3. Did the ALJ commit reversible error by improperly rejecting Ms. Rapisarda's and Ms. Elsner's opinion?

4. Did the ALJ commit reversible error by making a negative credibility finding?

**VII. Discussion**

Plaintiff's first argument pertains to the testimony provided by Dr. Margaret Moore, a medical expert, and the testimony of Sharon Welter, a vocational expert.

At the hearing, Dr. Moore reviewed the B criteria. She concluded that her activities of daily living were only mildly limited. (Tr. 46.) She concluded that social functioning was moderately limited, and concentration, persistence and pace were also moderately limited. She then reviewed a mental medical source statement, and identified those items where she believed Plaintiff had a moderate or greater limitation: (1) the ability to carry out detailed instructions; (2) the ability to maintain attention and concentration for extended periods; (3) the ability to work in coordination with or proximity to others without being distracted by them; (4) the ability to interact appropriately with the general public; (5) the ability to accept instructions and respond appropriately to criticism from supervisors; (6) the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (7) the ability to respond appropriately to changes in the work setting; and (8) the ability to set realistic goals or make plans independently.[2]

---

[2]The record is unclear which form Dr. Moore was reviewing, but both parties agree that the numbers identified by Dr. Moore correspond to the above-listed

At the hearing, Ms. Welter was questioned by the ALJ:

> Okay. Ms. Welter, now I'm going to ask you to assume a hypothetical individual of the same age, education and work experience as the claimant. Looking at the regulatory categories we have a younger worker with limited education. This hypothetical individual would have no exertional limits but would have the following mental limitations–attention and concentration to understand, remember and follow simple instructions, that's based on the medical record and Dr. Moore's testimony today, problems with detailed instructions. The individual would also be able to perform routine tasks, but would be limited to interactions with the general public to only superficial, that–with Dr. Moore's–as well. And the individual would need to work primarily alone with only occasional supervision. Based on Dr. Moore's indication, it would be difficult to accept instruction and getting along with coworkers. Finally, the jobs have to be defined as a low stress job. And by that I define it as only occasional changes in a work setting since the work setting–changes in the setting would be difficult.

(Tr. 65.)

Ms. Welter, based on the limitations presented by the ALJ concluded that Plaintiff was capable of performing her past work as a cashier/checker, mold dresser, and sorter, agricultural produce. (Tr. 65.)

Plaintiff's counsel then questioned Ms. Welter. In doing so, he defined moderate limitations as a "significant interference with basic work-related activities." (Tr. 66-67.) He then listed the eight categories identified by Dr. Moore and asked if it was more probable than not that a hypothetical person with these limitations would not be able to sustain employment. Ms. Welter replied, "It would be if moderate is defined as a significant interference, yes." (Tr. 67.)

Based on Ms. Werner's testimony, if moderate limitations is defined as a significant interference with basic work-related activities, Plaintiff is disabled. However, the Court does not have to address this issue because the Court concludes the ALJ's credibility determination is not supported by the record.

At the hearing, Plaintiff testified that she is an isolated person and she does not like to leave her house. (Tr. 55.) She gets paranoid and only talks to her family

---

limitations. *See* ECF No. 18 at 6; ECF No. 20 at 5-7.

and one friend. (Tr. 55.) She does not associate with anybody else. (Tr. 55.) She testified that she only leaves her house if her mom or dad will come pick her up, which takes place about once or twice a month. (Tr. 55.) Her sister will pick her up maybe once or twice a month to go grocery shopping. (Tr. 55.) And she goes to Rite Aid once or sometimes twice a month to get her medication. (Tr. 55.) She testified that Rite Aid is about a block away from her house. (Tr. 55.)

Plaintiff went on to explain that her inability to be around people is beginning to affect her child. (Tr. 56.) Her child attends speech therapy because he does not speak much because he does not leave the house. (Tr. 56.) She expressed remorse over this, and stated, "if I can, if I would be able to just go out there and be around other people and stuff, that I would do it. But it's just too hard for me." (Tr. 56.) She reports that if she goes shopping to Wal-Mart or Safeway, she needs to take an anxiety pill. (Tr. 56.)

Ms. Welter was asked by Plaintiff's counsel if Plaintiff would be able to sustain employment if her testimony given at the hearing was accepted. (Tr. 66.) Ms. Welter replied, "Well, it appears that she does not leave her house unless accompanied to and with someone else. So I would assume that would mean she would miss a great deal of work, if not all work, so would not be able to be retained if that were the case." (Tr. 66.)

In her order, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. (Tr. 27.) The ALJ relied on the following to make her assessment: (1) Plaintiff was not taking medication suggesting compliance problems; (2) Plaintiff failed to show for several counseling appointments suggesting she has contributed, at least in part, to her continuing condition; (3) secondary gain issues may be present because the description of her problems in the treatment notes suggest economic factors, and she also expressed having housing problems; and (4) Plaintiff can perform a full range of daily activities. (Tr. 27-28.)

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir.1990). When there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186.

Here, the ALJ's credibility determination is not supported by the record under the clear-and-convincing standard. There is nothing in the record to suggest that her treatment providers believed that she was malingering, or they disbelieved that she had significant trust issues, or that her inability to go outside the house

without supervision was not true.[3] Instead, the record shows that Plaintiff was receiving extensive counseling–sessions that lasted 90-120 minutes, which Dr. Moore found "astounding." (Tr. 49.) The ALJ focused on the treatment notes that indicated that Plaintiff's mood was stable and that she was making good progress, but failed to acknowledge Plaintiff's sleep problems due to nightmares, her inability to trust individuals, the fact that she is easily overwhelmed, her inability to be around men, and her inability to leave her home without being accompanied by her family members, that are present in these same treatment notes. For instance, in October, 2009, while Ms. Mack indicated that Plaintiff's mood was stable, at the same time Plaintiff reported that she was doing worse than before and she was having difficulty concentrating, as well as having obsessions and fears. (Tr. 398.) She reported that her irritability and fears are keeping her from socializing or being around friends. She also indicated that her relationship with her sister was deteriorating. (Tr. 398.) This does not reflect a person who is making good progress. Similarly, in November, 2009, although Plaintiff indicated she was doing better, Ms. Mack concluded that Plaintiff endorsed depression, anxiety, irritability, difficulty concentrating, obsessions and phobias, even though she described Plaintiff's mood as stable. (Tr. 402). At that session, Plaintiff asked to have her medication increased. (Tr. 402).

The ALJ suggested that there may be compliance problems since in May, 2008, Plaintiff was not taking any medications. The ALJ chose to focus on only one piece of the puzzle, however. In April, 2008, Plaintiff met with Sandra Elsner for a counseling session, and asked for a medication management appointment because she felt her depression was getting worse. Rather than impeding her

---

[3] On April 29, 2008, Sandra Elsner indicated that Plaintiff reported her moods were low and she did not want to leave the house. Plaintiff was concerned that her depression was getting worse. (Tr. 281). There is nothing in the treatment notes that suggest Ms. Elsner did not believe Plaintiff.

treatment, as the ALJ suggests, Plaintiff was actively seeking medication to deal with her mental health issues. Additionally, due to ulcerative colitis, there was a period of time where she was unable to take her psych meds because she was vomiting. *See* Tr. 354; *see also* Tr. 390 (indicating that she was not taking her medications because she is still having bouts of nausea and vomiting and is unable to keep most of her medications down.). Also, at the hearing, which was conducted in 2010, Plaintiff reported that she was taking Lamotrigin, Seroquel, Welbutrin, Prozosin, and Larazepam. (Tr. 53.) The record shows that since May, 2008, Plaintiff was taking her psych medication, except for when they were making her sick. The ALJ's conclusion that Plaintiff had compliance problems is not supported by the record.

The ALJ also cited the fact that she failed to show for several counseling appointments, citing Exhibit 4F. But, a close look at the record shows that the two incidents of no-show cited by the ALJ occurred in 2005.[4] On the other hand, the record indicates numerous monthly sessions taking place between 2007 and 2009. The Court was able to find one no-show in December 12, 2007, in which Plaintiff cancelled because she was not feeling well and because of the weather, but the record also shows that she made up this appointment on December 30, 2007. (Tr. 278, 280.) At the hearing, Plaintiff reported that she was seeing Sandra Elsner for mental health counseling and Kathy Mack for medication management, each once a month. (Tr. 54.) The record reflects that she regularly attends monthly appointments. She testified that she has not missed that many, but if she did, it was not intentional because she likes to go as the sessions permit her to get her feelings

---

[4]On January 26, 2005, a note written by Leticia Chavez stated that Plaintiff did not show for intake appointment. (Tr. 296). However, the record shows that she underwent a 90 minute intake appointment on February 14, 2005. The other notation cited by the ALJ indicated that the case was closed because Plaintiff did not show after the intake. (Tr. 293.)

out. (Tr. 58.) The ALJ's conclusion that Plaintiff was contributing to her continuing condition is not supported by the record.

Finally, the ALJ suggested that secondary gain issues may be present because according to treatment notes, the description of Plaintiff's problems included economic factors and she also expressed housing problems. (Tr. 28.) Such descriptions consisted of either check boxes that listed various problems, or a list of various categories for Axis IV. For instance, on a Central WA Comp Mental Health Treatment Plain, Axis IV categories listed: 1. Problems with primary support group; 2. Other psycho-social and environmental problems; 3. Problems related to social environment; 4. Economic problems; and 5. Educational problems. (Tr. 369.)[5] Without more description of the economic problems, it was unreasonable for the ALJ to assume these notations suggested secondary gain.

Also, the housing problem referred to by the ALJ was not due to economic concerns. Rather, at a treatment session, Plaintiff expressed concerns because she was suspicious of a neighbor's possible drug activity, as there was constant traffic in and out. (Tr. 388.) Ms. Elsner helped Plaintiff make a report to CPS during the session because Plaintiff was concerned about a young child living in that apartment. (Tr. 388.) As a result of Plaintiff's discomfort, she had been living with her sister. (Tr. 388.) This "housing problem" does not support the ALJ's conclusion that Plaintiff is not credible because of secondary gain issues.

Here, the ALJ's adverse credibility decision was not harmless. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195–97 (9th Cir.2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). As set forth above, there is no basis in the record to discredit Plaintiff's testimony that she is socially isolated and does

---

[5] *See also* Tr. 372 (11/24/2008 Central WA Comprehensive Mental Health- listing of the same Axis 4 DSM descriptions); Tr. 381 (2/17/2009, same); Tr. 386 (3/30/2009, same); Tr. 391 (5/14/2009, same).

not leave the house, except if she is accompanied by her family. Based on Ms. Werner's testimony, it is clear that Plaintiff is not employable, and therefore, the ALJ committed clear error in concluding she is not disabled.

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000). Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *Benecke*, 379 F.3d at 587. As the *Benecke* court instructed: the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Because Ms. Werner testified that if Plaintiff's testimony was to be believed, she would not be employable, and because the ALJ erred in discrediting Plaintiff's testimony, it is clear from the record that the ALJ would be required to find Plaintiff disabled if her testimony was properly credited. As such, remand for an immediate award of benefits is appropriate.

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.
2. Defendant's Motion for Summary Judgment, ECF No. 20, is **DENIED**.
3. The decision of the Commissioner denying benefits is **reversed** and the case is **remanded** to the ALJ for an immediate award of benefits.

///

///

///

///

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 28th day of January, 2014.

*s/Robert H. Whaley*

ROBERT H. WHALEY
United States District Judge

Q:\RHW\aCIVIL\2012\Johnson (SS)\sj.wpd

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15